UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRANDON SAVAGE,<br><br>               Plaintiff,<br><br>     v.<br><br>CHRISTIAN GELOK, WILLIAM POULSON, DR. AGLER, HOWARD KEITH YORDY, MURRAY YOUNG, and CORIZON, INC.,<br><br>               Defendants. | Case No. 1:16-cv-00073-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

      Plaintiff, a prisoner in the custody of the Idaho Department of Correction (IDOC), is proceeding pro se and in forma pauperis in this civil rights action. Now pending before the Court is Defendants' motion for partial summary judgment. Defendants assert that Plaintiff failed to exhaust his administrative remedies with respect to many of his claims. (Dkt. 17.) Also pending is Plaintiff's motion for summary judgment (Dkt. 21), but that motion is not yet ripe for adjudication.

      Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1. Accordingly, the Court enters the following

**MEMORANDUM DECISION AND ORDER - 1**

Order, granting Defendants' Motion in part and dismissing all of Plaintiff's claims other than (1) Plaintiff's claim, of inadequate medical treatment for gastrointestinal problems, against Dr. Young for the treatment Plaintiff received through October 20, 2015, and (2) Plaintiff's claim, of inadequate medical treatment for gastrointestinal problems, against Corizon for the treatment Plaintiff received through December 22, 2015.

## INTRODUCTION

Plaintiff alleges that he has been denied adequate medical care for his gastrointestinal problems and his umbilical hernia. Pursuant to 28 U.S.C. §§ 1915 and 1915A, the Court previously reviewed Plaintiff's Complaint (Dkt. 3), as well as his supplemental pleading (Dkt. 9), and determined that he stated a plausible claim for relief against Defendants Gelok, Poulson, Agler, Young, and Corizon. (Dkt. 10.)

Defendants now allege that all claims against Defendants Gelok, Poulson, and Agler, as well as Plaintiff's hernia claims against Defendants Young and Corizon, must be dismissed because Plaintiff failed to exhaust available administrative remedies.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**1.    Factual Background**

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's version of facts.

### A.    *IDOC Grievance Procedures*

IDOC has established a grievance process, which is attached as Exhibit A-1 to the Affidavit of Jill Whittington, IDOC's Grievance Coordinator ("Whittington Aff.") (Dkt.

**MEMORANDUM DECISION AND ORDER - 2**

17-3). This grievance process consists of three stages. First, any inmate with a concern is required to seek an informal resolution by filling out an offender concern form "addressed to the most appropriate staff member." (*Id.* ¶ 5.) If the issue cannot be resolved informally through the concern form, the inmate must then file a grievance form. (*Id.*) A grievance form must be submitted within 30 days of the incident giving rise to the grievance.

When submitting a grievance form, the inmate must attach a copy of the concern form, showing the inmate's attempt to settle the issue informally; the grievance must also "contain 'specific information including [the] nature of the complaint, dates, places, and names.'" (*Id.* ¶ 6.) "Grievances are limited to one page of the grievance form, and an inmate's description of the issue being grieved must be written within the appropriate area of the grievance form." (*Id.*)

When the Grievance Coordinator receives a grievance, the coordinator enters the grievance information into the Corrections Integrated System ("CIS"), an electronic database used to log offender grievances and grievance appeals. (*Id.*) If a grievance is not completed, is filled out incorrectly, or is otherwise deemed in violation of policy—such as if the inmate failed to attach a copy of the concern form—the grievance is returned to the inmate without being processed, along with a description of the grievance's deficiencies. (*See* Ex. 1, Appx. D, Dkt. 17-4 at 24.) Grievances rejected in this manner "are not retained by the Grievance Coordinator." (Whittington Aff., Dkt. 17-3 at ¶ 6.)

**MEMORANDUM DECISION AND ORDER - 3**

If a grievance is correctly completed, the grievance coordinator assigns the inmate grievance "to the staff member most capable of responding to and, if appropriate, resolving the issue." (*Id*.) That staff member responds to the grievance and returns it to the coordinator. The coordinator then forwards the grievance to a "reviewing authority." In the case of a medical grievance, the reviewing authority is the "facility Health Services Administrator." (*Id*.) The reviewing authority reviews the staff member's response to the grievance and issues a decision on the inmate's grievance. The grievance decision is then returned to the inmate.

If the decision on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that decision. (*Id*. ¶ 8.) If the grievance involves a medical issue, the "appellate authority" is the Health Services Director. (*Id.*) The appellate authority decides the grievance appeal and the appeal form is returned to the inmate. Not until the completion of all three of these steps—concern form, grievance form, and grievance appeal—is the grievance process exhausted. (*Id.* at ¶ 9.)

### B.     *Plaintiff's Medical Grievances*

Plaintiff attempted to filed a medical grievance on September 10, 2015. This grievance, which was assigned Grievance No. II150000947 ("Grievance 947"), was returned to Plaintiff without action because Plaintiff "failed to attach a concern form showing his attempt to resolve the issue." (Whittington Aff. at ¶ 12.)

Plaintiff resubmitted the grievance on October 4, 2015, this time attaching the required concern form. This grievance, which was assigned Grievance No. II150001060 ("Grievance 1060"), stated that Plaintiff should be examined by a gastroenterologist and

**MEMORANDUM DECISION AND ORDER - 4**

that he had attempted to resolve his concerns with several individuals, including Defendant Young. (Ex. A-3 to Whittington Aff., Dkt. 17-6 at 2-3; Ex. 1 to Plaintiff's Aff., Dkt. 19-4 at 5-7.) This grievance did not mention Plaintiff's hernia issue. This grievance was granted on October 20, 2015, because Plaintiff was "already scheduled to see a gastroenterologist." (*Id*.)

On December 21, 2015, Plaintiff again attempted to submit a medical grievance "in regard to the very inappropriate care [Plaintiff] received from" Defendant Agler. (Plaintiff's Aff. at 3.) This grievance, which was assigned Grievance No. II150001358 ("Grievance 1358"), stated as follows:

> On [December 11, 2015], I was admitted to the infirmary by a provider. While in the infirmary, I was met by wannabe Dr. Agler. I refused to allow him to convince me that it isn't normal to have a bowel movement everyday and that it's perfectly normal to go up to 2 weeks without one. Now me gosh darn knowing well that not to be true, I called him on it & he kicked me out of the infirmary and blatantly refused me anymore treatment, even taking away my wheelchair and forcing me to walk around in agonizing pain.

(Ex. 2 to Plaintiff's Aff., Dkt. 19-5 at 3.) Grievance 1358 was returned to Plaintiff without being processed the same day it was submitted, because Plaintiff did not attach a concern form to the grievance.[1] (*Id*. at 2; Plaintiff's Aff. at 3; Ex. A-2 to Whittington Aff.) Plaintiff did not resubmit this grievance.

---

[1] Whittington claims that Grievance 1358 was also rejected "because it contained inappropriate or harassing comments." (Whittington Aff. at ¶ 14.) Because there is no evidence in the record to support this assertion, the Court does not accept it for purposes of Defendant's Motion.

**MEMORANDUM DECISION AND ORDER - 5**

Plaintiff asserts that he submitted another grievance on December 21, 2015. This grievance, which was not issued a grievance number, stated:

> Going on 4 months now, I have once again begun experiencing severe intestinal distress until which continues to cause me extremely uncomfortable and debilitating pain. Medical has blatantly refused & denied to follow the orders/recommendations made by the actual specialists and only desires to treat me by continuously dosing me up on laxatives, telling me that eventually something will have to come out, unto which is not helping and only making things worse.

(Plaintiff's Aff. at 7; Ex. 3 to Plaintiff's Aff., Dkt. 19-6 at 4.) On December 22, 2015, the grievance coordinator returned this grievance to Plaintiff without processing it, stating that the issue "was previously grieved" in Grievance 1060. (Plaintiff's Aff. at 8; Ex. 3 to Plaintiff's Aff., Dkt. 19-6 at 4.)

Finally, on January 25, 2016, Plaintiff attempted to file a grievance, which was issued grievance number II160000120 ("Grievance 120"). Although the content of Grievance 120 is not in the record, Plaintiff does not dispute Whittington's assertion that this grievance was returned to Plaintiff without being processed because Plaintiff's writing "did not stay within the appropriate area on the form as required by IDOC policy." (Whittington Aff. ¶ 14.)

2.  **Standard of Law Governing Summary Judgment**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or

**MEMORANDUM DECISION AND ORDER - 6**

defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, there must be no *genuine* dispute as to any *material* fact for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record or show that the adverse party is unable to produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co.*, 336 F.3d at 889.

**MEMORANDUM DECISION AND ORDER - 7**

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

**MEMORANDUM DECISION AND ORDER - 8**

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Ninth Circuit "ha[s] repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988) (citation and internal quotation marks omitted). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain "testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document." *Id.*

3.  **Exhaustion of Administrative Remedies Requirement**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[1] prisoners are required to exhaust all available administrative remedies within the prison system before they can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *see also Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (holding that a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**MEMORANDUM DECISION AND ORDER - 9**

U.S. 81, 90-91 (2006). However, an inmate need exhaust only those remedies that are "available"—that is, an inmate must exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Proper exhaustion is required "even where it may appear futile." *Nunez v. Duncan*, 591 F.3d 1217, 1231 (9th Cir. 2010). The exhaustion-of-administrative-remedies requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

As the PLRA intended, all motions addressing exhaustion of administrative remedies, including "disputed factual questions relevant to exhaustion[,] should be decided at the very beginning of the litigation." *Id*. at 1171. Rule 56 prohibits the courts from resolving genuine disputes as to material facts on summary judgment. However, if a genuine dispute exists as to material facts relating to an exhaustion defense such that summary judgment is inappropriate, the Court is authorized—but not required—to decide the disputed facts in an appropriate preliminary proceeding, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71. *See also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S.

178, 184 (1936) (stating that the court may "inquire into the facts as they really exist") (internal quotation marks omitted); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (stating that the court may "hold[] an evidentiary hearing on the disputed facts"); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (stating that the court "has the discretion to take evidence at a preliminary hearing in order to resolve any questions of credibility or fact" and that the plaintiff must establish the facts "by a preponderance of the evidence, just as he would have to do at trial") (internal quotation marks omitted). In all cases, "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino*, 747 F.3d at 1170.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the plaintiff failed to exhaust that remedy, then the burden of production shifts to the plaintiff to produce evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

There are three general situations that can render a prison grievance process effectively unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or

**MEMORANDUM DECISION AND ORDER - 11**

consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted).

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," or if administrators otherwise interfere with an inmate's pursuit of relief. *Id*. at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," administrative remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

**MEMORANDUM DECISION AND ORDER - 12**

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F. 3d 1162.

**4.     Discussion**

   *A.     Defendants' Initial Showing*

Defendants' submitted evidence of four of the five[2] grievances that Plaintiff filed regarding his medical treatment: (1) Grievance 947, submitted on September 10, 2015; (2) Grievance 1060, submitted on October 4, 2015; (3) Grievance 1358, submitted on December 21, 2015; and (4) Grievance 120, submitted on January 25, 2016.

As to Grievance 947, Plaintiff did not comply with the grievance policy's requirement to attach a concern form. Therefore, Defendants have met their initial burden of showing that Grievance 947 did not properly exhaust any of Plaintiff's claims of inadequate medical treatment. *See Jones*, 549 U.S. at 218 (stating that the prison's grievance policy "define[s] the boundaries of proper exhaustion").

The parties agree that Grievance 1060 was properly exhausted as to the medical treatment claims identified in that grievance. The grievance discussed Plaintiff's gastrointestinal problems and stated that Dr. Young had not acted to resolve Plaintiff's concerns. (*See* Ex. A-3 to Whittington Aff., Dkt. 17-6 at 2-3; Ex. 1 to Plaintiff's Aff., Dkt. 19-4 at 5-7.) Grievance 1060 thus exhausted any claims of inadequate gastrointestinal treatment through October 20, 2015—the date that Grievance 1060 was

---

[2] A copy of the grievance that was not assigned a number was submitted by Plaintiff. The unnumbered grievance will be discussed further in Section 4.B., *infra*.

**MEMORANDUM DECISION AND ORDER - 13**

granted by the Health Services Director—against Defendant Young and Defendant Corizon. (*Id.*) However, Defendants have met their initial burden of showing that Grievance 1060 did *not* exhaust any of Plaintiff's claims against the other individual Defendants or his hernia claims against Defendants Young and Corizon, because the grievance did not refer to such individuals or claims.

Grievance 1358, like Grievance 947, did not include a copy of the concern form as required by IDOC policy. (Ex. 2 to Plaintiff's Aff., Dkt. 19-5 at 2; Plaintiff's Aff. at 3; Ex. A-2 to Whittington Aff.) Therefore, Defendants have also met their initial burden in showing that Grievance 1358 did not exhaust any of Plaintiff's claims.

Finally, Grievance 120 was returned to Plaintiff without action because Plaintiff had not kept his grievance limited to the space provided. Because doing so is a requirement of the IDOC grievance policy, Defendants have met their initial burden of establishing that Grievance 120 did not exhaust any of Plaintiff's current claims.

### B.   *Availability of Remedies*

As explained above, Defendants have met their initial burden to show that Plaintiff did not properly exhaust any of his claims other than those identified in Grievance 1060. The burden now shifts to Plaintiff to raise a genuine issue of material fact regarding whether administrative remedies were effectively unavailable to him. *See Albino*, 747 F.3d at 1172.

**MEMORANDUM DECISION AND ORDER - 14**

            i.        The Unnumbered Grievance: Claims against Corizon for Inadequate Gastrointestinal Treatment from October to December 2015

Plaintiff has satisfied his burden of showing that administrative remedies were unavailable with respect to the claim identified in the unnumbered grievance, which Plaintiff submitted to prison authorities on December 21, 2015. Plaintiff has shown that he filed the grievance but that it was returned to him without action. (*See* Ex. A-1 to Whittington Aff., Dkt. 17-4 at 24.) The Grievance Coordinator refused to process the unnumbered grievance, purportedly because it involved the same issue that Plaintiff had previously raised in Grievance 1060. However, a comparison of these two grievances shows that this statement was incorrect.

Grievance 1060 involved the gastrointestinal treatment Plaintiff had been receiving through October 20, 2015. On the other hand, the unnumbered grievance was filed in *December* and states that Plaintiff's treatment for his intestinal problems have been "[g]oing on 4 months now," that Plaintiff is dissatisfied with his continued treatment for those problems, and that Plaintiff believes his current treatment (which would include the treatment he received after he exhausted Grievance 1060) was "only making things worse." (Plaintiff's Aff. at 7; Ex. 3 to Plaintiff's Aff., Dkt. 19-6 at 4.) This is plainly a complaint about the *ongoing* care Plaintiff was receiving as of the date of the unnumbered grievance—not about the previous treatment, or lack thereof, identified in Grievance 1060. Because prison staff improperly refused to process the unnumbered grievance, Plaintiff has met his burden of showing that he was prevented from properly exhausting the claim identified in that grievance—inadequate gastrointestinal treatment,

**MEMORANDUM DECISION AND ORDER - 15**

from October to December 2015, against Defendant Corizon.³ *See Albino*, 747 F.3d at 1172-73. Therefore, this claim is excused from exhaustion.

### ii. Remaining Claims

Plaintiff's has not satisfied his burden of establishing a genuine issue of material fact as to the exhaustion of any claims other than those set forth in the unnumbered grievance (and in Grievance 1060).

Plaintiff first contends that the IDOC's grievance policy is not readily available to inmates. Although Whittington states that "each offender receives both written and verbal instructions regarding the grievance procedures" within 10 days of arriving at the prison (Whittington Aff. at ¶ 4), the Court will accept, for purposes of this decision, Plaintiff's assertion that he did not receive a copy of the grievance policy directly from prison authorities.

However, that assertion does not establish a genuine issue of material fact. Plaintiff acknowledges he was informed by prison officials that he could review the policy by requesting it from a staff member, though he states generally that inmates "are not even provided with ample time to actually review the entire policy." (Plaintiff's Aff., Dkt. 19-3, at 2.) Plaintiff thus had access to the policy if he chose to review it. Plaintiff does not contend that he never reviewed the grievance policy. And regardless of how much time Plaintiff might have spent reviewing that policy, the fact that Plaintiff properly

---

³ The unnumbered grievance does not refer to any individual Defendant, and so any claims against them regarding Plaintiff's medical treatment from October to December 2015 are unexhausted. (*See* Whittington Aff. ¶ 6 (stating that policy requires a grievance to "contain 'specific information including [the] nature of the complaint, dates, places, and names.'").)

**MEMORANDUM DECISION AND ORDER - 16**

exhausted Grievance 1060 proves that Plaintiff knew how to navigate the prison grievance system. Therefore, that Plaintiff allegedly did not have his own physical copy of the grievance process is irrelevant.

Plaintiff also asserts that the IDOC's grievance process is "ludicrous" and "ridiculous" because the staff member who initially responds to the grievance is generally the same staff member who answered the concern form. (Plaintiff's Aff. at 4.) Plaintiff appears to be arguing that the grievance process is futile because there is no reason why the first level response to the grievance would ever be different from the answer given in the concern form.

However, a belief that the grievance system is futile is insufficient to excuse the exhaustion requirement under the PLRA. *Nunez*, 591 F.3d at 1231. The only potential exception arises when the grievance process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859. Here, Grievance 1060 was granted, establishing that inmates can and do obtain relief through the grievance process. Therefore, Plaintiff has not raised a genuine dispute of material fact as to whether the IDOC's grievance process is a simple dead end. *See id.* The Court also notes that the first level responder on the grievance is *not* the person who issues a decision on the grievance—it is the reviewing authority who decides the grievance. Therefore, it is irrelevant that the first level responder may be the same individual who answered the concern form, and Plaintiff has not raised a genuine

**MEMORANDUM DECISION AND ORDER - 17**

dispute of material fact as to exhaustion of his claims (other than the claims identified in Grievance 1060 and the unnumbered grievance).

5.  **Conclusion**

For the foregoing reasons, most of Plaintiff's claims are unexhausted and will be dismissed without prejudice.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion for Partial Summary Judgment (Dkt. 17) is GRANTED IN PART as set forth above.

2. All of Plaintiff's claims—other than (1) Plaintiff's claim, of inadequate medical treatment for gastrointestinal problems, against Dr. Young for the treatment Plaintiff received through October 20, 2015, and (2) Plaintiff's claim, of inadequate medical treatment for gastrointestinal problems, against Corizon for the treatment Plaintiff received through December 22, 2015—are DISMISSED without prejudice. All Defendants except Defendants Young and Corizon are DISMISSED from this case.

DATED: **November 28, 2016**

_____
B. Lynn Winmill
Chief Judge
United States District Court

MEMORANDUM DECISION AND ORDER - 18