UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRANDON SAVAGE,<br><br>  Plaintiff,<br><br>  v.<br><br>CHRISTIAN GELOK, WILLIAM POULSON, DR. AGLER, HOWARD KEITH YORDY, MURRAY YOUNG, and CORIZON, INC.,<br><br>  Defendants. | Case No. 1:16-cv-00073-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court are Plaintiff's Motion for Summary Judgment (Dkt. 21), Defendant's Cross-Motion for Summary Judgment (Dkt. 28), Plaintiff's Motion for Default Judgment (Dkt. 30), Plaintiff's Cross-Motion for Summary Judgment (Dkt. 31), Plaintiff's Motion for Requesting Appointment of Counsel (Dkt. 35), and Plaintiff's Motion to Supplement (Dkt. 41).

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, the Court will forego oral argument and decide this matter on the record. For the reasons stated below, the Court will grant Defendants' Cross-Motion for Summary Judgment, deny all other pending motions, and dismiss this case in its entirety.

# BACKGROUND

## 1. Procedural Background

Plaintiff filed this action on February 12, 2016, pursuant to 42 U.S.C. § 1983, alleging that he has been denied adequate medical care for his gastrointestinal problems and his umbilical hernia in violation of the Eighth Amendment to the United States Constitution. Compl., Dkt. 3. Plaintiff originally named as Defendants three prison medical providers (Defendants Gelok, Poulson, and Agler) and the Warden of ISCI (Defendant Yordy). *Id*. at 6. Plaintiff then supplemented his complaint to name, as additional Defendants, the private company providing medical care to Idaho inmates under contract with the IDOC (Corizon, LLC), and Corizon's Regional Medical Director for the State of Idaho (Defendant Young). Dkt. 9.

On April 7, 2016, this Court filed its Initial Review Order. Dkt. 10. The Court determined that Plaintiff's Complaint, liberally construed, stated colorable Eighth Amendment claims against Defendants Gelok, Poulson, Agler, Young, and Corizon. However, the Initial Review Order did not authorize Plaintiff to proceed against Defendant Yordy.

On November 28, 2016, Defendants' Motion for Partial Summary Judgment (Dkt. 17) was granted in part. Dkt. 26. All of Plaintiff's claims—other than (1) Plaintiff's claim of inadequate medical treatment for gastrointestinal problems against Dr. Young, for the treatment Plaintiff received through October 20, 2015, and (2) Plaintiff's claim of inadequate medical treatment for gastrointestinal problems against Corizon, for the treatment Plaintiff received through December 22, 2015—were dismissed without

prejudice. *Id.* All Defendants except Defendants Young and Corizon were dismissed from the case. *Id.* Accordingly, Plaintiff's only pending Eighth Amendment claims are against Defendants Dr. Young and Corizon, LLC.

## 2.    Factual Background

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's version of facts, insofar as that version is not contradicted by clear documentary evidence in the record. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

### A.    *Plaintiff's Injury and Medical Care*

Plaintiff has been diagnosed with a redundant colon, which is an unusually long colon. Dkt. 28-3 ¶ 4. There are two basic ways to treat this condition—surgically and medically. Surgical treatment entails removing a section of the colon. Medical treatment, on the other hand, include remedies such as laxatives, special diet, pain medications, wheelchairs, and periodic monitoring for acute complications. The acute complications that will necessitate colon resection surgery are 1) large bowel obstructions, or 2) volvulus (a section of the colon wrapping around itself). *Id.* ¶ 51.

### (1)    June 26, 2015 – September 9, 2015

From June 26 to July 10, 2015, Plaintiff was treated at St. Luke's Regional Medical Center ("St. Luke's") for complaints of constipation and a possible small bowel

obstruction. Dkt. 28-10 at 367. On initial diagnosis, x-rays and a CT scan showed no evidence of obstructions, volvulus, inflammation, mass, or stricture (narrowing of the intestines). *Id*. at 378.

On June 30, 2015, gastroenterologist Dr. Mark Lloyd performed a colonoscopy, which showed possible partial volvulus, but no obstruction. *Id*. at 374.

On July 2, 2015, general surgeon Dr. Renee Bourquard performed a diagnostic laparoscopy, flexible colonoscopy, lysis (removal) of adhesions in the left upper quadrant of the abdomen, and takedown of left lateral peritoneal reflection (referring to an "apron" that covers the intestines that is comprised of fat and lymph nodes). *Id*. at 370–73. According to Dr. Young, these procedures decreased Plaintiff's future chances of volvulus. Dkt. 28-3 ¶ 10. After the procedures, Dr. Bourquard discussed the option of colon resection surgery with Dr. J. Chris Kantarian, a colorectal surgeon. *Id*. The two surgeons agreed that colon resection surgery was not indicated[1] at that time due to the absence of volvulus or a large bowel obstruction. *Id*. However, Dr. Bourquard noted that the surgery *could* be indicated in the future if Plaintiff's symptomology worsened. *Id*. None of the doctors in this visit were affiliated with IDOC or Corizon.

Plaintiff's procedures at St. Luke's kept him hospitalized there until July 10, 2015. His medical records indicate that Dr. Bourquard requested an outpatient follow-up in the

---

[1] The term "indicate," as used in the medical context, is a verb defined as "to demonstrate or suggest the necessity or advisability of." *Indicate*, Webster's Third New International Dictionary (1993).

Gastrointestinal and Surgery clinics 1–2 weeks after discharge from St. Luke's. Dkt. 21-3 at 2.

On July 10, 2015, Plaintiff was discharged from St. Luke's and returned to the prison infirmary, where he was monitored for an additional week. Dkt. 28-9 at 338–41, 359–65. Dr. Young, the Regional Medical Director for Corizon, checked in with Plaintiff in the infirmary on several occasions throughout that week. *Id.* Both Dr. Young and Plaintiff himself indicated that the laparoscopic surgery incisions were healing appropriately and his condition was improving. *Id* at 360. Due to Plaintiff's improving condition, Dr. Young decided that sending Plaintiff back to St. Luke's for a follow-up was not clinically indicated. Dkt. 28-3 at ¶ 13. Instead, prison nurse practitioner ("NP") Christian Gelok conducted Dr. Bourquard's requested follow-up in the infirmary on July 16, 2015. Dkt. 28-9 at 341. NP Gelok noted that Plaintiff was stable with no complications. *Id.* Prison NP William Poulson also followed up on Plaintiff's infirmary discharge on July 29, 2015. *Id.* at 358 Plaintiff deferred an examination and NP Poulson noted on the medical record that Plaintiff was "happy with the POC (plan of care)." *Id.*

On August 5, 2015, Plaintiff visited the infirmary with complaints of minor problems with constipation and hard stools. *Id.* Physician Assistant ("PA") Daniel Barry prescribed medication to soften his stools and prohibit acid production in his stomach. *Id.*

On September 9, 2015, Plaintiff visited the infirmary complaining of not having a bowel movement for over a week. Dkt. 28-4 at 16. NP Gelok examined x-rays of Plaintiff's abdomen. These x-rays showed some constipation, but were "otherwise

unremarkable" in that the condition had not worsened since Plaintiff's procedures at St. Luke's. *Id.*

### (2)     September 10, 2015 – December 15, 2015

On September 10, 2015, Plaintiff visited the infirmary complaining of two weeks of abdominal pain, bloating, and severe constipation. Dkt. 28-4 at 37; Dkt. 28-9 at 318–19. NP Poulson noted normal vital signs, and no objective signs of distress, such as guarding or abdominal distension. *Id.* Plaintiff, however, complained of suprapubic pain upon palpation. *Id.* NP Poulson ordered another x-ray of Plaintiff's abdomen, which showed a large fecal load but no obvious features of obstruction. Dkt. 28-4 at 17. Dr. Migliori, an infirmary doctor, consulted with Dr. Lloyd (the gastroenterologist at St. Luke's) for specialized recommendations. Dkt. 28-9 at 355. Dr. Lloyd recommended a stimulant (rather than osmotic) laxative. *Id.* Dr. Migliori prescribed the stimulant laxative, nausea medication, pain medication. He also ordered Plaintiff be sent to St. Luke's if he had not improved by the next day. *Id.*

On September 11, 2015, Plaintiff had not improved and was sent to the emergency department at St. Luke's. *Id.* at 353. There, he received a CT scan of his abdomen. The scan showed signs of a diffusely distended colon, but no signs of an obstruction or acute inflammation. Dkt. 28-10 at 398–99. Without the latter signs, Plaintiff was not admitted to the hospital. *Id.* at 393. However, Plaintiff was instructed to follow up with gastroenterologist Dr. Lloyd. *Id.* Upon return to the infirmary, Plaintiff was prescribed antibiotics and a bowel cleansing solution. Dkt. 28-9 at 314.

Between September 12 and October 1, 2015, Plaintiff visited the infirmary twelve times. Dkt. 28-9 at 352, 350, 349, 344; Dkt. 28-5 at 79, 75, 73, 71, 69, 62, 60; Dkt. 28-10 at 400. Either PA Dellwo, Dr. Migliori, or Dr. Young examined Plaintiff on each occasion by checking for objective presentations such as unusual bowel sounds, guarding, or distension in his abdomen. *Id*. None were ever found. *Id*. Plaintiff invariably reported pain in the suprapubic region with palpation. *Id*. The doctors also ordered x-rays and CT scans, which constantly showed a large fecal load and constipation. *Id*. at 18, 60, 344, 350, 400. To resolve the constipation, the doctors prescribed several laxatives, a special diet, a wheelchair, and narcotic pain medication. *Id*. On September 14, 2015, Dr. Migliori scheduled an urgent consultation for Plaintiff to see gastroenterologist Dr. Lloyd at St. Luke's. Dkt. 28-7 at 188. However, Dr. Young chose not to refer Plaintiff to a *surgical* consult at this time because he felt that "assess[ing] the cause of [the] constipation" would be "the more appropriate treatment plan" at this time." Dkt. 28-3 at ¶ 26.

On October 14, 2015, a gastroenterology NP Cory Shuler (who worked under the supervision of Dr. Lloyd) saw Plaintiff for an off-site GI consult. Dkt. 28-7 at 190–93. NP Shuler noted that Plaintiff "needs surgical consult as outpatient" and is "likely gonna require left-sided colon resection surgery." *Id*. at 193.

On October 21, 2015, NP Poulson ordered a urinalysis to determine if that was the cause of Plaintiff's suprapubic pain. Dkt. 28-4 at 29.

On October 29, 2015, Dr. Migliori requested a routine (non-urgent) surgical consult for Plaintiff. Dkt. 28-7 at 169. That request was approved by Dr. Agler, who

reviews consultation requests when Dr. Young is unavailable. *Id*. While Dr. Agler had initially scheduled Plaintiff to see general surgeon Dr. Bourquard (who had treated Plaintiff in July 2015), Dr. Agler later crossed out Dr. Bourquard's name and scheduled Plaintiff to see another general surgeon Dr. Henson. *Id*. The cost of the surgical consult is the same to see either doctor, who are both general surgeons at St. Luke's. Although it is still unclear why this change was made, Dr. Young claims that it was probably because Dr. Bourquard was unavailable. Dkt. 28-3 at ¶ 37.

On December 2, 2015, the day before Plaintiff's surgical consult, NP Poulson saw Plaintiff in the infirmary for a check-up and medication refill. Dkt. 28-4 at 55. Plaintiff self-reported that he was having soft, daily bowel movements. *Id*. At this time, NP Poulson recommended Plaintiff increase his ambulation, and accordingly discontinued the wheelchair. *Id*.

On December 3, 2015, Plaintiff appeared for his off-site surgical consult. Dkt. 28-7 at 182. Plaintiff was seen by Dr. Roberto Barresi, a general surgeon at St. Luke's in Dr. Henson's practice group. *Id*. Dr. Barresi reviewed Plaintiff's records and discussed Plaintiff's history with him. *Id*. Plaintiff asserts that Dr. Barresi was confused as to why Plaintiff had been sent to him. Dkt. 21–1 at 17. Contrary to Plaintiff's assertions, however, Dr. Barresi's notes state that "[*Plaintiff* ] was under the impression that he was being referred back to Drs. Bourquard and Kantarian, and was somewhat surprised to see that he was in our clinic. Based on their previous interactions with him, he would like to return to their care for further evaluation and possible intervention. I believe this is appropriate." Dkt. 21–8 at 6.

On December 10, 2015, Dr. Agler saw Plaintiff in the infirmary. During this visit, Dr. Agler continued the plan of care, but discontinued Plaintiff's wheelchair to improve circulation. Dkt. 21–6 at 3.

On December 15, 2015, Dr. Agler approved a routine (non-urgent) surgical consultation request for Plaintiff to see Dr. Bourquard, who is also a general surgeon. *Id*. at 179.

### (3)     February 4, 2016 – March 15, 2016

On February 4, 2016, Dr. Young saw Plaintiff for complaints of diarrhea. Dkt. 28-4 at 44. Dr. Young collected stool samples and sent them to the lab to check for infections. *Id*. During this appointment, Plaintiff told Dr. Young about three previous abdominal surgeries: an appendectomy in 1995, an exploratory abdominal surgery in 1999, and the diagnostic laparoscopy in 2015. *Id*. Dr. Young noted that Plaintiff's surgical history increases the likelihood complications associated with surgery, such as infections and adhesions (where the colon does not properly seal after resection surgery). Dkt. 28-3 at ¶ 46. Furthermore, Dr. Young determined that Plaintiff's surgical history decreases the likelihood that colon resection surgery would resolve Plaintiff's symptoms. *Id*.

On March 2, 2016, Dr. Young saw Plaintiff in a follow-up. Dkt. 28-4 at 43. During this visit, Dr. Young informed Plaintiff that the stool test was negative for infectious processes. *Id*. Dr. Young prescribed a new laxative to compensate for the diarrhea. *Id*.

During this visit, Dr. Young also discussed with Plaintiff his intention to continue medical, rather than surgical treatment. *Id*. Plaintiff alleges that Dr. Young made this decision because there was a chance Plaintiff would be released from incarceration at the end of the year. To illustrate, Plaintiff alleges that Dr. Young stated, "hopefully they'll release [you] and then [you]'ll be able to get the ‘required' care [you] need." Dkt. 21 at 28 (emphasis in original). Notably, Plaintiff then alleges that Dr. Young (in the same conversation) said, "You don't need surgery. You want surgery because you were told you may need it, but I'm telling you you don't. I just don't see it helping you and besides, surgery is expensive and we just don't need to be making the taxpayers pay that kind of money for something that I feel will be of no benefit to you." *Id*. at 29.

On March 15, 2016, Dr. Young cancelled the non-urgent surgical consultation with Dr. Bourquard, which had been approved by Dr. Agler on December 15, 2015. *Id*. at 21. However, he noted that if Plaintiff were to develop volvulus or a bowel obstruction, surgery would be indicated. *Id*. at 43.

### (4) September 20, 2016

On September 20, 2016, Plaintiff alleges that he was sent to another off-site surgical consult with a general surgeon. Plaintiff alleges that the (unidentified) surgeon stated that he/she was "not qualified for what [Plaintiff] need[s] done." Dkt. 21–1 at 26. Neither party provides any medical documentation of this visit. Defendants do not mention this event.

### B. *Corizon's Utilization Management ("UM") Policy*

To determine whether outside services will be approved, Corizon uses a company-wide process called "Utilization Management" ("UM"). Dkt. 28-3 at ¶ 50. Dr. Young described the process as follows:

> The UM Process seeks to assure the delivery of high quality healthcare as cost-effectively as possible. UM procedures require a determination that a requested specialized service is clinically indicated and medically necessary. Where there is an alternative treatment or diagnostic plan to the specialized services requested and the alternative will provide the equivalent therapeutic or diagnostic result in a more cost-effective manner, the alternative may be chosen.

*Id*. As Corizon's Regional Medical Director, Dr. Young reviewed and provided the final approval for requests for specialized services. Dkt. 28-3 at ¶ 50. Dr. Young used this process to provide off-site medical services for Plaintiff. Dkt. 28-7 at 169, 179, 188. Dr. Young also used this process to cancel Plaintiff's non-urgent surgical consultation on March 15, 2016. Dkt. 28-4 at 43.

Besides the affidavit of Dr. Young (Dkt. 28-3), neither side has provided any documents that describe the process itself. It appears that factors such as "equivalent treatment" and "cost/benefit analysis" are solely determined by Dr. Young's independent medical judgment. Plaintiff has only offered conclusory allegations that the UM policy prioritized cost over a substantial risk to his health.

## LEGAL STANDARD

### 1. Summary Judgment Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the

summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). Rather, there must be no *genuine* dispute as to any *material* fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). And, although all reasonable inferences that can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *id.* at 630–31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu,* 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson,* 477 U.S. at 252.

2.      **Eighth Amendment Deliberate Indifference Standard**

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, a prisoner must show that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard— deliberate indifference." *Snow v. McDaniel,* 681 F.3d 978, 985 (9th Cir. 2012). The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, the Supreme Court of the United States has explained that "[b]ecause society does not expect that

prisoners will have unqualified access to health care, deliberate indifference to medical

needs amounts to an Eighth Amendment violation only if those needs are

'serious.'" *Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury
> or the unnecessary and wanton infliction of pain [;] ... [t]he existence of an injury
> that a reasonable doctor or patient would find important and worthy of comment
> or treatment; the presence of a medical condition that significantly affects an
> individual's daily activities; or the existence of chronic and substantial pain . . . .
> *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992) (internal citations

omitted), *overruled on other grounds, WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th

Cir. 1997) (en banc).

As to the subjective standard, a prison official or prison medical provider acts with

"deliberate indifference . . . only if the [prison official] knows of and disregards an

excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe, Nev.,* 290 F.3d

1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). "Under this

standard, the prison official must not only 'be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists,' but that person 'must also

draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (*quoting*

*Farmer*, 511 U.S. at 837).

"If a [prison official] should have been aware of the risk, but was not, then the

[official] has not violated the Eighth Amendment, no matter how severe the

risk." *Gibson,* 290 F.3d at 1188 (citation omitted). However, "whether a prison official

had the requisite knowledge of a substantial risk is a question of fact subject to

demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer,* 511 U.S. at 842; *see also Lolli v. County of Orange,* 351 F.3d 410, 421 (9th Cir. 2003) (deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that defendant actually knew of a risk of harm).

In the medical context, a conclusion that a defendant acted with deliberate indifference requires that the plaintiff show both "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Jett v. Penner,*439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104–05 (footnotes omitted).

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). A delay in treatment does not constitute a violation of the Eighth Amendment unless the delay causes further harm. *McGuckin,* 974 F.2d at 1060. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," summary judgment is appropriate. *Toguchi,* 391 F.3d at 1061.

## ANALYSIS

1. **Motions for Summary Judgment (Dkts. 21, 28, 31)**

   A. ***Defendant Murray Young, M.D.***

   Plaintiff's allegations against Dr. Young focus on the decision to treat Plaintiff's redundant colon medically, rather than surgically. Plaintiff alleges that Dr. Young, in an unreasonable effort to save costs, deliberately kept Plaintiff from seeing off-site specialists who could resolve his chronic GI problems.

   As outlined above, Eighth Amendment claims have an objective and subjective standard. *Snow*, 681 F.3d at 985. As to the objective standard, a reasonable fact finder could conclude that Plaintiff has a serious medical need; his condition is one that reasonable doctors have found "worthy of comment and treatment." *McGuckin*, 974 F.2d at 1059–60. This is evident from the June 26, 2015 surgery at St. Luke's, as well as from the number of times Plaintiff received treatment after the surgery.

As to the subjective standard, no reasonable fact finder could conclude from the record presented that Dr. Young deliberately disregarded Plaintiff's serious medical need. Our previous cases demonstrate that there are four principal ways in which a plaintiff can show that the prison medical staff acted with deliberate indifference to a serious medical need: (1) failure to provide treatment; (2) disregard, without medical justification, of an off-site specialist's orders; (3) delay in treatment which causes a serious injury; or (4) treatment which falls substantially below standard medical judgment. Here, Plaintiff fails to demonstrate any of these conditions.

### (1)     Continuous Treatment

First, no reasonable fact finder could conclude from the record presented that Dr. Young ever stopped treating Plaintiff. From the time of his first complaints on June 26, 2015, Plaintiff received constant treatment in the infirmary, visited the off-site emergency department, consulted with gastroenterology specialists, and had three surgical consults. These visits always resulted in further steps to alleviate Plaintiff's condition, including surgical procedures, new medications, or further consultations with specialists.

### (2)     Disregarding Off-Site Specialists

Second, no reasonable fact finder could conclude that Dr. Young consciously disregarded a substantial risk to Plaintiff's health by disregarding the orders of another specialist without medical justification. Plaintiff alleges two separate instances of Dr. Young contradicting an off-site specialist's recommendation. Neither example could show deliberate difference.

### a. Dr. Bourquard's discharge instructions

In July 2015, Plaintiff alleges that under the supervision of Dr. Young, Dr. Bourquard's instructions for a follow-up visit at St. Luke's were "completely disregard[ed]." Dkt. 21-1 at 2. The Court disagrees.

Dr. Young did provide a follow-up—in the infirmary. Therefore, unlike the treating physicians in *Anderson* and *Pena*, Dr. Young did not entirely fail to provide a course of treatment recommended by on off-site specialist. Rather than deliberate indifference, this is an example of a difference in medical opinion, which is not actionable under § 1983. *See Jackson v. Mcintosh*, 90 F.3d 330, 332 (9th Cir. 1996) (showing that "where a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference as a matter of law). Furthermore, Plaintiff puts forth no evidence (other than his opinions) that Dr. Young's decision to conduct the follow-up at the infirmary "was so inadequate . . . that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County,* 163 F.3d 982, 989 (7th Cir. 1998).

### b. NP Shuler's surgical consult recommendation

Plaintiff also asserts that Dr. Young consciously disregarded NP Shuler's recommendation for a surgical consult by sending him to Dr. Barresi, an incompetent surgeon. This claim fails because Dr. Barresi was indeed a competent surgeon, and

Plaintiff lacks the right to demand specific treatment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

On December 3, 2015, Plaintiff attended a surgical consult with Dr. Barresi. Plaintiff alleges that Dr. Barresi, due to lack of skill, recommended Plaintiff be transferred to the care of Dr. Bourquard. Dr. Bourquard, ironically, holds the same medical qualification as Dr. Barresi. Dr. Barresi's progress notes, however, note that "[*Plaintiff*] was under the impression that he was being referred back to Drs. Bourquard and Kantarian, and was somewhat surprised to see that he was in our clinic." Dkt. 21–8 at 6.

Even considering Plaintiff's allegation that Dr. Barresi allegedly stated that he was unqualified to perform colon resection surgery, that statement has been clearly refuted by the record. First, Dr. Barresi made no mention in his progress notes that he lacked the qualification to perform colon resection surgery. Dkt. 21–8 at 6. Second, if Dr. Barresi believed that general surgeons were not qualified to perform colon resection surgery, he would not have transferred Plaintiff to another general surgeon. Third, Dr. Young asserts in his affidavit that general surgeons are indeed trained and qualified to perform colon resection surgery. Dkt. 28-3 at ¶ 40. As stated above, statements in a brief, unsupported by the record, cannot be used to create a factual dispute. *Barnes*, 64 F.3d at 1396 n.3.

Once again, the Eighth Amendment does not provide a right to a specific treatment. *Forbes*, 112 F.3d at 267. Plaintiff is entitled to reasonable measures to meet a substantial risk of serious harm. *Id*. Upon NP Shuler's recommendation for Plaintiff to have a surgical consult, Dr. Agler scheduled a surgical consult with a general surgeon

who is qualified to perform colon resection surgery. Plaintiff refused the general surgeon's treatment because he demanded to see Dr. Bourquard (who Plaintiff incorrectly believed to be a colorectal surgeon). Not only does Plaintiff lack the right to demand a colorectal surgeon, he also lacks the right to demand treatment from Dr. Bourquard. No reasonable fact finder could conclude that by sending Plaintiff to a qualified surgeon, Dr. Young disregarded NP Shuler's recommendation for a surgical consult.

### (3)     Delay Causing Injury

The record then shows a considerable delay between the December 2015 surgical consult and the September 2016 surgical consult. Dkt. 21–1 at 26. A delay in treatment does not constitute deliberate indifference unless the delay was caused by the Defendant, and the delay caused a serious injury. *See Wood v. Idaho Department of Corrections*, 391 F.Supp. 2d 852, 862 (D. Idaho 2005).

Our analysis should stop at the first element; by refusing the first surgical consult, Plaintiff caused the delay. However, even under the assumption that Dr. Young caused this delay, Plaintiff cannot show that the delay caused a serious injury. Instead, Plaintiff only offers conclusory evidence, stating, "Who knows what kind of damage my intestines suffered on behalf of the excessive laxative treatment and being left to undergo and deal with obstipation (severe constipation). Instead of just a resection I could now end up having to have my entire colon removed." Dkt. 40 at 4. With no documented evidence in the record showing that the delay caused a serious injury to Plaintiff, no reasonable fact finder could conclude that this delay constituted deliberate indifference.

Plaintiff also asserts that Dr. Young delayed treatment until Plaintiff's release from incarceration. Once again, even assuming that Dr. Young made this statement (and thus caused a delay), Plaintiff still cannot show that the delay caused a serious injury. After this conversation, Plaintiff's symptomology did not worsen, and no subsequent visits showed any damage to Plaintiff's colon. Plaintiff's speculation of damage holds no weight with the Court. And as stated above, Dr. Young continuously managed Plaintiff's bowel movements and pain. Even construing the facts in the light most favorable to the Plaintiff, his condition remained stable; it did not get worse or better. Without evidence that the delay caused a serious injury, Dr. Young's actions could not amount to deliberate indifference.

### (4)    Treatment Below Standard Medical Judgment

Finally, no reasonable fact finder could conclude from the record presented that Dr. Young's decisions fell substantially below standard medical judgment. Once again, "to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (citation omitted).

From the outset, two surgeons at St. Luke's (Drs. Bourquard and Kantarian) determined that colon resection surgery was not indicated. This medical consensus shows that Dr. Young's initial decision to pursue medical rather than surgical treatment certainly fell within standard medical judgment. And even if another doctor had disagreed with Dr. Young's decision regarding surgical treatment, mere differences of

opinion among medical personnel do not rise to the level of deliberate indifference. *See*

*Brown v. Beard*, 445 Fed. Appx. 453, 455–56 (3rd Cir. 2011) (per curiam) (holding

prison medical personnel did not violate Eighth Amendment when they refused to

authorize surgery, despite another doctor's opinion that surgery was warranted, and

instead prescribing pain medication and abdominal belt, plus monitoring); *Hill v. Jones*,

No. 98–5100, 2000 WL 571948, at *3 (6th Cir. May 3, 2000) ("[A] disagreement

between medical personnel over the appropriate course of treatment is insufficient to

establish an Eighth Amendment claim."); *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th

Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is

over the adequacy of the treatment, federal courts are generally reluctant to second guess

medical judgments and to constitutionalize claims which sound in state tort law.").

When Plaintiff's condition began to flare up again in September 2015, Dr. Young

continued to monitor, assess, and treat the condition. When Plaintiff's condition

worsened, Dr. Young approved Plaintiff to have an off-site consult with a

gastroenterologist. When the gastroenterologist recommended a surgical consult, Dr.

Agler approved and scheduled a surgical consult. In other words, Dr. Young and other

Corizon medical staff followed the standard medical protocol for specialized conditions.

Finally, Dr. Young's decision to cancel Plaintiff's surgical consult in March 2016

did not fall below standard medical judgment. Dr. Young had two medical bases upon

which he cancelled the appointment. First, Plaintiff had not developed volvulus or a large

bowel obstruction—the two conditions that Drs. Bourquard and Kantarian had indicated

would necessitate colon resection surgery. Second, Plaintiff had recently revealed to Dr.

Young that he had had three abdominal surgeries: an appendectomy in 1995, an exploratory abdominal surgery in 1999, and a diagnostic laparoscopy in 2015. This surgical history increased the risk of complications with colon resection surgery. Weighing the risk of the surgery with its benefits, Dr. Young cancelled the surgical consult. Furthermore, Plaintiff indicates that Dr. Young later scheduled another surgical consult for him.

At best, Plaintiff has shown a disagreement of medical judgment as to the appropriate treatment for his gastrointestinal problems. However, "[a] plaintiff's showing of nothing more than 'a difference of medical opinion' as to the need to pursue one course of treatment over another [i]s insufficient, as a matter of law, to establish deliberate indifference. In other words, where a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Moreover, Plaintiff has provided no evidence indicating that the medical treatment actually provided was medically unacceptable. "In the face of medical records indicating that treatment was provided and physician affidavits indicating the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997).

Ultimately, no reasonable juror could determine that Dr. Young was deliberately indifferent to Plaintiff's serious medical needs. Based on the record presented, there is

insufficient evidence to show that Dr. Young subjectively disregarded a substantial risk to Plaintiff's health. Plaintiff fails to demonstrate a gap in treatment, disregard for an off-site specialist's orders, delay causing serious injury, or a course of treatment which fell substantially below standard medical treatment. Plaintiff also provides no evidence to show that the allegedly inadequate medical care caused a detrimental effect to his health.

Accordingly, Defendants' Cross-Motion for Summary Judgment will be granted as to Dr. Young and Plaintiff's Motions for Summary Judgment denied as to the same.

### B. *Defendant Corizon*

Plaintiff also alleges that Corizon's UM policy prevented him from seeing specialists, constituting deliberate indifference under the Eight Amendment. Plaintiff must show that Corizon has a custom of deliberate indifference *separate from* the medical decisions of the individual medical providers. *Lonn v. Corizon Health*, No. 1:14-CV-00031-EJL, 2017 WL 2879792, at *2 (D. Idaho July 6, 2017).

To establish liability under § 1983 against a municipality, local governing body, or private entity performing a public function, a plaintiff must allege sufficient facts in the complaint to satisfy the test articulated in *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690–94 (1978): (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation.

Previous prisoners have incorrectly alleged that a cost-saving policy alone violates the Eighth Amendment. However, as this Court noted, "Even assuming that [the prison

medical care provider] seeks to cut costs and maximize profit where it can-much like most insurance companies in the health care industry in the outside world-the Court finds nothing in the current factual record to show that [the prison medical care provider]'s policies or its status as a for-profit company have resulted in deliberate indifference to this Plaintiff's medical needs." *Goodrick v. French*, No. 3:09-00355-EJL, 2011 WL 675265, at *7 (D. Idaho Feb. 17, 2011), *aff'd in part sub nom. Goodrick v. Corr. Med. Servs., Inc.*, 505 F. App'x 658 (9th Cir. 2013).

Here too, no reasonable fact-finder could conclude that Corizon's UM policy—which simply aims to avoid unnecessary costs—kept Plaintiff from receiving services to which he was constitutionally entitled. First, the UM policy regularly results in providing surgical treatment to prisoners. Dkt. 28-3 at ¶ 4. As proof, the UM policy provided a laparoscopic surgery to Plaintiff on July 2, 2015. Dkt. 28-10 at 370–73. The UM policy also allowed Plaintiff to see two off-site gastroenterologists and three off-site surgeons. Second, there is no evidence that the UM policy prevented Dr. Young from providing outside services for Plaintiff. Dr. Young indicated that he denied outside treatment on March 15, 2016 based solely on his medical judgment that it was unnecessary. Plaintiff has only offered conclusory allegations that the UM policy prioritized cost over a substantial risk to his health. Statements in a brief, unsupported by admissible evidence, cannot be used to create an issue of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n. 3 (9th Cir.1995). And, even if Dr. Young had been deliberately indifferent to Plaintiff's serious medical need, Corizon is not liable for his independent decisions.

Accordingly, Defendants' Cross-Motion for Summary Judgment as to Defendant Corizon will be granted.

### C.    *Conclusion*

While the Court is sympathetic to what Plaintiff has been through, he has failed to put forward sufficient evidence to meet the high legal standard of deliberate indifference. Based on the record presented, no reasonable fact finder could find for Plaintiff on the subjective element of his Eighth Amendment claims—that Dr. Young and Corizon consciously disregarded a substantial risk to Plaintiff's health. Dr. Young consistently treated Plaintiff's condition, acted upon the orders of off-site specialists, and appropriately relied on his medical judgment in all of his decisions. Second, nothing in the record indicates that Corizon's UM policy prioritized cost-saving over proper treatment. Accordingly, the Court will grant Defendants' Cross-Motion for Summary Judgment and deny Plaintiff's Motions for Summary Judgment.

### 2.    **Plaintiff's Motion to Supplement**

The pending Motions for Summary Judgment were fully briefed as of February 2, 2017. The discovery deadline was April 27, 2017. On May 11, 2017, while awaiting the outcome of these motions, Plaintiff filed a request "asking and requesting authority to be able to enter and submit current/recent continued evidence of deliberate indifference on behalf of Corizon LLC Re: My care & treatment." Dkt. 41. Due to Plaintiff's *pro se* status, this court liberally construes this as a Motion to Supplement brought pursuant to Federal Rule of Civil Procedure 15(d).

On August 1, 2017, upon request from this Court, Plaintiff filed a supplemental affidavit setting forth the specific events or allegations he wishes to add to his Complaint. Dkt. 46. Those allegations center around the decision of Dr. Haggard, new Regional Medical Director of Corizon, to provide Plaintiff a signmoidoscopy as opposed to the more invasive colonoscopy. Dr. Haggard determined that a signmoidoscopy would be more suitable because Plaintiff had complained of pain on his left side. Plaintiff asserts that Dr. Haggard's decision constitutes deliberate indifference because it conflicted with the prior recommendation of a gastroenterologist.

Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). District courts generally apply Rule 15(a)'s "freely given" standard to a Rule 15(d) motion to supplement. *See Crew v. Dep't of Corr. & Rehab.*, No. 116-CV-00590-LJOBAMPC, 2017 WL 2379924, at *1 (E.D. Cal. June 1, 2017) (collecting cases). That is, leave to supplement should be freely given unless there is evidence of bad faith, undue delay, prejudice to the opposing party, or the supplement would be futile. *See Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir. 2003).

Given the current posture of the case, granting Plaintiff's Rule 15(d) motion would unduly prejudice Defendants. The case has been pending for over sixteen months. Discovery has closed and both sides have fully-briefed motions for summary judgment pending. Supplemental pleadings would require the parties to conduct discovery into the new factual allegations, refile motions for summary judgment, and await a determination

from the Court. This factor weighs heavily against granting the motion. *Accord Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278–79 (10th Cir. 2001) (motion to supplement properly denied because "[d]iscovery was closed, [Defendant] was ready for trial or for the alternative of summary judgment, and it had in fact moved for summary judgment on all of [Plaintiff]'s claims."); *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir. 1999) (motion to amend properly denied where filed "on the eve of summary judgment proceedings" because it would significantly delay proceedings).

The futility of the proposed supplement also weighs strongly against granting Plaintiff's motion. To begin, the factual allegations do not support the claims against any existing Defendants, and Plaintiff has not requested leave to name an additional defendant in this case. Second, the factual allegations fall short of stating an Eighth Amendment claim. As stated above, a difference in medical judgment as to the preferable course of treatment is insufficient to state a claim for deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). The choice between two alternate diagnostic tests—such as a colonoscopy and a signmoidoscopy—is "a classic example of a matter for medical judgment" and does not constitute deliberate indifference. *See Estelle*, 429 U.S. at 107.

In sum, allowing a supplemental pleading at this late juncture would be both futile and unduly prejudicial. The Court will deny the Motion to Supplement.

**3. Plaintiff's Motion for Default Judgment (Dkt. 30)**

Plaintiff filed a Motion for Default Judgment, asserting that Defendants allegedly failed to timely respond to his motion for summary judgment as ordered by the Court.

Because Defendants timely filed their response to Plaintiff's Motion for Summary Judgment on December 28, 2016, the Court will deny the Motion.

**4.     Plaintiff's Motion Requesting Counsel (Dkt. 35)**

Because Plaintiff's claims are defeated on summary judgment, his motion requesting appointment of counsel will be denied as moot.

## CONCLUSION

Based upon the record, no reasonable finder of fact could conclude that Dr. Young or Corizon have been deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. Accordingly, the Court will grant Defendants' Motion for Summary Judgment and deny all other pending motions. Because this order resolves all remaining disputes against all parties in this matter, Plaintiff's complaint shall be dismissed in its entirety.

## ORDER

**IT IS ORDERED:**

1.     Plaintiff's Motion for Summary Judgment (Dkt. 21) is **DENIED**.

2.     Defendants' Cross-Motion for Summary Judgment (Dkt. 28) is **GRANTED**.

3.     Plaintiff's Cross-Motion for Summary Judgment (Dkt. 31) is **DENIED**

4.     Plaintiff's Motion for Default Judgment (Dkt. 30) is **DENIED**.

5.     Plaintiff's Motion Requesting Counsel (Dkt. 35) is **DENIED as moot**.

6.  Plaintiff's Motion Asking and Requesting Authority to be Able to Enter and Submit Current/Recent Continued Evidence of Deliberate Indifference ("Motion to Supplement") (Dkt. 41) is **DENIED**.

7.  The Court will enter a separate judgment in accordance with Fed. R. Civ. P. 58.

8.  The Clerk of Court is respectfully directed to close this case.

DATED: August 14, 2017

B. Lynn Winmill
Chief Judge
United States District Court